BRYAN SCHWARTZ LAW
BRYAN J. SCHWARTZ (SBN 209903)
RACHEL M. TERP (SBN 290666)
180 Grand Ave., Suite 1380
Oakland, California 94612
Tel: (510) 444-9300
Fax: (510) 444-9301
Email: bryan@bryanschwartzlaw.com
rachel@bryanschwartzlaw.com
*Attorneys for Plaintiffs and Proposed
FLSA Collective and California Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Luis Duque and Daniel Thibodeau, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>Bank of America, National Association, and DOES 1-50,<br><br>Defendant. | Case No.: 8:18-cv-01298-PA-MRW<br><br>**PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      May 13, 2019<br>Time:      1:30p.m.<br>Place:      Courtroom 9A<br>Hon. Percy Anderson |

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, Case No. Case No.: 8:18-cv-01298-PA-MRW

NOTICE OF MOTION AND MOTION TO THE COURT AND ALL INTERESTED
PARTIES:

**PLEASE TAKE NOTICE** that a hearing will be held on Plaintiffs' Motion for
Final Approval of Class Action Settlement on May 13, 2018 at 1:30p.m. in the Courtroom
of the Honorable Percy Anderson, located at First Street Courthouse, 350 W. 1st Street,
Courtroom 9A, Los Angeles, California 90012. At the hearing, Class Representatives Luis
Duque and Daniel Thibodeau, through their attorneys of record and on behalf of all other
Client Advocates and Operations Consultants ("Advocates") similarly situated, will and
hereby do move for the Court to: grant final approval of the Parties' class action settlement
in the amount of $1,950,000, under Federal Rule of Civil Procedure 23(e), award
enhancements in the amount of $5,000 to the Class Representatives and $2,500 for opt-in
Plaintiffs Sharon Gamble, Felipe Fuentes, and Alina Abad, and enter judgment pursuant
to the Parties' Settlement Agreement. The motion will be heard along with Plaintiff's
motion for attorneys' fees and costs.

The Court already granted preliminary approval of the Amended Settlement
Agreement between the Class Representatives and Defendant Bank of America, National
Association. ECF 26-1. Support for the Settlement from the Class has been strong. Two
California Member have opted out, and no one has objected to the Settlement. Overall,
there is a participation rate of approximately 80%.

Plaintiffs make this motion on the ground that the proposed Amended Settlement
is fair, adequate, and reasonable. The motion is based on: this Notice of Motion; the
Memorandum of Points and Authorities in Support; the April 15, 2019 Declaration of
Rachel M. Terp, Esq. in support of this motion ("Terp Decl."); Plaintiffs' Unopposed
Amended Motion for Preliminary Approval of Class and Collective Action Settlement
(ECF 15), and all declarations filed in support thereof (ECF 15-1 through 15-5); Plaintiffs'
Unopposed Amended Motion for Preliminary Approval of Class and Collective Action
Settlement ("Amended Settlement Agreement") (ECF 26), and the declaration filed in
support thereof, including Exhibit A, the Amended Joint Stipulation for Settlement and
Release of Class and Collective Action Claims ("Amended Settlement Agreement") (ECF
26-1); any oral argument of counsel; the complete files, records, and pleadings in the

above captioned matter; and such additional matters as the Court may consider.

A Proposed Order is submitted herewith.

Dated: April 15, 2019                    **BRYAN SCHWARTZ LAW**

By: _/s/ Rachel M. Terp_____.
BRYAN J. SCHWARTZ
RACHEL M. TERP
_Attorneys for Individual and Representative_
_Plaintiffs and the Putative Class._

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................1

II.     PROCEDURAL BACKGROUND .....................................................2

III.    THE PROPOSED SETTLEMENT IS A STRONG RESULT AND THE NOTICE AND CLAIMS PROCESS WERE ADMINISTERED TO PROVIDE CLASS MEMBERS THE OPPORTUNITY TO PARTICIPATE ....................................................................................4

        A.    The Settlement Agreement Provides for Substantial Recovery for Class Members. .............................................................................4

        B.    The Notice and Claims Process Encompassed Efforts to Reach Former Class Members and Ensure Maximum Opportunity for Class Members to Benefit. ..................................................................5

              1.    The Notice Process Fulfilled and Surpassed the Promises Made on Preliminary Approval....................................................5

              2.    The Reaction of the Class Members Demonstrates Overwhelming Support for the Settlement ............................................6

IV.     THE COURT SHOULD GRANT FINAL APPROVAL ...........................7

        A.    Class Certification Is Appropriate ...........................................7

        B.    Final Approval Is Warranted for a Fair, Adequate, and Reasonable Settlement Like this One ..........................................8

        C.    Each Factor Weighs in Favor of Granting Final Approval .....................9

              1.    The Settlement is an Exceptional Result in a Case where Success was Uncertain.......................................................9

              2.    The Amount Offered to Settle the Claims is Substaintial, in Light of the Size of the Claims and the Risks of Proceeding ....................10

              3.    Further Litigation Would be Risky, Expensive, Complex, and Time-Consuming....................................................13

              4.    The Stage of the Proceedings Favors this Settlement ....................13

5.   The Able Class Representation and Class Counsel's support for the Deal Support Settlement Approval ...................................................14

6.   The Postive Reaction of the Class to the Proposed Settlement Strongly Favors Settlement Approval..............................................14

D.   Representative and Opt-In Plaintiffs' Modest Enhancements Are Appropriate ........................................................................................15

1.   Class Representatives' Enhancements ...........................................15

2.   Opt-In Plaintiffs' and Declarants' Enhancements............................18

E.   The Requested *Cy Pres* Beneficiary Is Appropriate .............................20

V.   **CONCLUSION** ..............................................................................**20**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ...................................................................... 13

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) ................................................................. 16

*Carter v. Anderson Merchandisers, LP,*
    2010 WL 144067 (C.D. Cal. Jan. 7, 2010) ................................................ 12

*Cash v. Cycle Craft Co, Inc.,*
    508 F.3d 680 (1st Cir. 2007) ...................................................................... 10

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448, 463 (2d Cir. 1974) ............................................................... 11

*Cody v. Hillard,*
    88 F. Supp. 2d 1049 (D.S.D. 2000) ............................................................ 15

*Copas v. East Bay Mun. Util. Dist.,*
    61 F.Supp.2d 1017 (N.D. Cal. 1999) ......................................................... 10

*Dennis v. Kellogg Co.,*
    697 F.3d 858 (9th Cir. 2013) ...................................................................... 20

*Dent v. ITC Serv. Grp., Inc.,*
    2013 WL 5437331 (D. Nev. Sept. 27, 2013) ............................................ 18

*Dorsette v. TA Operating LLC,*
    2010 WL 11583002 (C.D. Cal. July 26, 2010) ......................................*passim*

*Duque, et al. v. Bank of America,*
    18-cv-00016-PA-MRW (C.D. Cal.) ..............................................2, 19, 20

*Franklin v. Kaypro Corp.,*
    844 F.2d 1222 (9th Cir. 1989) ...................................................................... 8

*Gamble v. Bank of America,*
    2:17-cv-08016 (C.D. Cal.) ............................................................................ 2

*Glass v. UBS Fin. Servs., Inc.,*
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ............................................. 16

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ......................................................................... 9

*In re Am. Bank Note Holographics, Inc.*,
　127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................... 15

*In re Art Materials Antitrust Litig.*,
　100 F.R.D. 367 (N.D. Ohio 1983) .................................................................. 15

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
　130 F.R.D. 366 (S.D. Ohio 1990) .................................................................. 15

*In re Mego Fin. Corp. Sec. Litig.*,
　213 F.3d 454 (9th Cir. 2000) .......................................................................... 16

*In re Warner Commc'ns Sec. Litig.*,
　618 F. Supp. 735 (S.D.N.Y 1985) .................................................................. 14

*In re Warner Commc'ns Sec. Litig.*,
　798 F.2d 35 (2d Cir. 1986) ............................................................................. 14

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
　571 F.3d 953 (9th Cir. 2009) .......................................................................... 13

*Kakani v. Oracle Corp.*,
　2007 WL 1793774 (N.D. Cal. Jun. 19, 2007) ............................................... 14

*Linney v. Cellular Alaska P'ship*,
　151 F.3d 1234 (9th Cir. 1998) ................................................................. 11, 13

*Ma v. Covidien Holding, Inc.*,
　2014 WL 360196 (C.D. Cal. Jan. 31, 2014) .................................................. 12

*Mandujano v. Basic Vegetable Prods., Inc.*,
　541 F.2d 832 (9th Cir. 1976) .......................................................................... 15

*Mojica v. Compass Group*,
　13-cv-1754 (C.D. Cal., Mar. 14, 2019) .......................................................... 12

*Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*,
　221 F.R.D. 523 (C.D. Cal. 2004) ................................................................... 14

*O'Sullivan v. AMN Servs., Inc.*,
　12-cv-2125 (N.D. Cal. Feb. 7, 2014) ............................................................. 12

*Officers for Justice v. Civil Serv. Comm'n*,
　688 F.2d 615 (9th Cir. 1982) ..................................................................... 8, 11

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)...................................................................11

*Ross v. U.S. Bank Nat. Ass'n*,
    2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ...........................................17

*Rutti v. Lojack Corp.*,
    2012 WL 3151077 (C.D. Cal. July 31, 2012).........................................6, 17

*Satchell v. Federal Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr.13, 2007) .............................................18

*Simon v. Toshiba Am.*,
    2010 WL 1757956 (N.D. Cal. April 30, 2010) ...........................................16

*Staton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003).....................................................2, 9, 15, 16

*Van Vranken v. Atl. Richfield Co.*,
    901 F.Supp. 294 (N.D. Cal. 1995) .......................................................16, 17

*Verkuilen v. MediaBank, LLC*,
    646 F.3d 979 (7th Cir. 2011)....................................................................10

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009)....................................................................13

*Wineland v. Casey's Gen. Stores, Inc.*,
    267 F.R.D. 669 (S.D. Iowa 2009) .......................................................18, 19

**Statutes, Regulations, Rules and Other Authority**

29 U.S.C. § 216 ...........................................................................................4

Federal Rule Civil Procedure 23 ........................................................1, 7, 8, 9

## I.    INTRODUCTION

Class Representatives Luis Duque and Daniel Thibodeau, on behalf of the California Advocates and the Federal Fair Labor Standards Act ("FLSA") Opt-in Advocates Class (collectively, "Plaintiffs"), requests that this Court grant final approval of the Parties' settlement of Plaintiffs' claims for overtime compensation and related wage and hour claims. This case was brought on behalf of Advocates, whose job duties consisted of processing individual customer service inquiries from consumers, regulatory agencies, Attorneys General offices, non-profits, and other miscellaneous business channels. The case alleges that both Advocates were misclassified as non-exempt employees under the FLSA and California law.

This settlement on behalf of the Advocates, in the amount of $1,950,000, is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e). A telling indicator of the fairness, adequacy and reasonableness of this Settlement is the favorable response of the class.[1] As of this filing, the overall participation rate of the 316 California and FLSA Class Members[2] is nearly 80%, and just two of the California Class Members opted out. *See* Terp Decl., ¶¶12, 13. No Class Member objected to the settlement. *Id*. ¶13. The favorable responses suggest that the Class wants this deal approved.

The per-person recovery is very substantial, also favoring final approval. Assuming 80% of the 316 Class Members participate in the settlement, the approximate average gross recovery per class member would be $7,708. *Id.* ¶17.

---

[1] The final day to mail in an opt-in form is actually April 16, 2019, so more opt-ins are anticipated.

[2] Previously, the Parties understood there were 321 Class Members. However, when Defendants submitted Class-Member data to the claims administrator, it was determined that five individuals had no workweeks within the relevant California and/or FLSA periods covered by the settlement. Terp Decl. ¶5. In total, the Class Member data shared with Rust showed that there were 316 true Class Members - 145 California Class Members and 171 members of the FLSA Collective. *Id*.

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT, Case No. Case No.: 8:18-cv-01298-PA-MRW, PAGE 1.

The Amended Settlement Agreement covers a period from 2014 to 2015 when Plaintiffs allege that Defendant misclassified Advocates as exempt. ECF 26-1, Exh. A, ¶ 4. Had this litigation continued, all but a handful of FLSA Collective Members would have been unable to assert the claims covered by this lawsuit due to passage of time as the FLSA's two- to three-year statute of limitations would have run. ECF 15-1, Aug. 2018 Declaration of Bryan J. Schwartz ISO Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement ("Aug. 2018 Schwartz Decl."), ¶ 8. By contrast, with this settlement, about 80% - hundreds of Advocates - will recover.

Class Counsel believes that the Settlement is a favorable result, given the risk, expense, and complexity, and likely duration of further litigation. Aug. 2018 Schwartz Decl., ¶ 7; Terp Decl. ¶ 2; *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

Accordingly, Plaintiffs Thibodeau and Duque respectfully request that this Court: (1) grant final approval of the class action settlement reached in this matter; (2) approve the Class Representatives' and opt-in Plaintiffs; enhancement payments; and (3) enter the proposed judgment accordingly. Plaintiffs' counsel's motion for fees and costs is filed separately, and Plaintiff renews the request for approval of the fees and costs.

## II.     PROCEDURAL BACKGROUND

As set forth in Plaintiffs' initial preliminary approval motion: on November 2, 2017, Plaintiffs filed *Gamble v. Bank of America*, Case No. 2:17-cv-08016-PA-MRW (C.D. Cal.); Plaintiffs withdrew that lawsuit and, on January 5, 2018, filed *Duque, et al. v. Bank of America ("Duque I")*, 18-cv-00016-PA-MRW (C.D. Cal.) with different lead Plaintiffs, because of concerns, *inter alia*, that Ms. Gamble's severance and release agreement might have affected her ability to represent a class. ECF 15, pdf p. 11:4-9.

Concerned about meeting the Local Civil Rule 22-3 class certification deadline, while preparing for a scheduled May 9, 2018 mediation, the Parties stipulated that Plaintiffs would withdraw their case without prejudice in exchange for tolling the statute of limitations pending mediation. ECF 15, pdf p. 11:10-24, 11:27-28.

At the May 9, 2018 mediation, with experienced class action mediator Steven Pearl, Esq., the parties made progress towards settlement, and on May 23, 2018, executed a Memorandum of Understanding. ECF 15, pdf pp. 11:24-12:1; ECF 15-1, Aug. 2018 Schwartz Decl. ¶ 5; Terp. Decl. Exhibit C, Pearl Resume. On July 26, 2018, after months of additional, arm's length negotiations, the parties executed a final, long-form settlement agreement, and filed *Duque, et al. v. Bank of America ("Duque II")*, 18-cv-01298 (C.D. Cal.). *See* ECF 15-1, Aug. 2018 Schwartz Decl. Exhibit A; ECF 1, Complaint; ECF 15.

On August 21, 2018, Plaintiffs filed their first preliminary approval motion. ECF 15. As set forth in Plaintiffs' subsequent preliminary approval motion: on October 14, 2018, the Court denied Plaintiffs' initial preliminary approval motion, rejecting the original settlement's back-of-the-check FLSA opt-in procedure. On November 5, 2018, the Parties arrived at an Amended Settlement Agreement which revised the proposed language and method of notice. On November 8, 2019, Plaintiffs filed their second preliminary approval motion. ECF 26; ECF 26-1, Declaration of Bryan J. Schwartz ISO Plaintiffs' Unopposed Amended Motion for Preliminary Approval of Class and Collective Action Settlement ("Nov. 2018 Schwartz Decl."), Exhibit A.

On December 10, 2018, the Court granted preliminary approval of the Amended Settlement Agreement, including the form and content of the Notices to be sent to the California Class Members and FLSA Collective, and approved the procedure for Class Members to participate in, opt out of, and object to the settlement, as well as for the FLSA Collective to opt-into the settlement affirmatively. ECF 33. The Court approved appointment of Rust as Claims Administrator, and implemented a schedule for calculating pro rata settlement distributions, sending Notice to the Class, submitting Plaintiffs' Counsel's fee petition, and filing the instant motion seeking final approval. *Id.* The Court set the final approval hearing for May 13, 2018. *Id.*

// 

//

III.    **THE PROPOSED SETTLEMENT IS A STRONG RESULT AND THE NOTICE AND CLAIMS PROCESS WERE ADMINISTERED TO PROVIDE CLASS MEMBERS THE OPPORTUNITY TO PARTICIPATE.**

A.    **The Settlement Agreement Provides for Substantial Recovery for Class Members.**

The terms of the Amended Settlement Agreement are described in detail in Plaintiffs' initial and second unopposed preliminary approval motions. ECF 15; ECF 26. The Amended Settlement Agreement was entered into the record as Exhibit A to the Declaration of Bryan J. Schwartz ISO Plaintiffs' Unopposed Amended Motion for Preliminary Approval of Class and Collective Action Settlement. ECF 26-1.

Essentially, in exchange for a release of wage and hour causes of action alleged in the Complaint or based on the same predicate facts as alleged in the Complaint, the Amended Settlement Agreement provides ample compensation to be paid immediately to all eligible California Advocates who chose not to opt out of the Settlement, and all eligible FSLA Collective Advocates who chose to opt into the Amended Settlement Agreement (pursuant to 29 U.S.C. § 216(b)). *See* ECF 26-1, Ex. A, ¶ 23.

Based on reports from the Claims Administrator to date, approximately 80% of Class Members have chosen to participate. With 80% of Class Members participating, they will recover $5,589.87 average, net, after all fees and costs are deducted. Terp Decl. ¶18. Counsel and the Claims Administrator will submit supplemental declarations in advance of the hearing on final approval, which will include detailed information about the final settlement participation and associated distributions. *Id.* ¶21.

Upon receiving this Court's approval, the entire Gross Settlement Amount of $1,950,000 will be paid into the settlement fund within 15 days – the deal is non-reversionary and designed to ensure swift payment to participating Class Members of their allocations. *See* ECF 26-1, Ex. A, ¶¶ 17, 78. Defendant would separately pay its share of payroll taxes into the settlement fund, in addition to the Gross Settlement Amount. *See id.*

**B.** **The Notice and Claims Process Encompassed Efforts to Reach Former Class Members and Ensure Maximum Opportunity for Class Members to Benefit.**

**1.** **The Notice Process Fulfilled and Surpassed the Promises Made on Preliminary Approval.**

In accordance with the Court's preliminary approval Order and the Amended Settlement Agreement, the Parties retained Rust to execute the notice and claims administration procedures. ECF 26-1, Exhibit A, ¶ 8; Terp Decl. ¶3. The California Class Member and FLSA Collective Settlement Notices described the litigation, the terms of the settlement, and each Class Member's options with regard to the proposed settlement. Terp Decl. ¶¶22, 23, Exhibits A & B. The court-approved Notice also stated, on its face, the minimum settlement payment amount that the recipient would receive if he or she opted into (or did not opt out of) the settlement (not including an additional payment that the recipient would potentially receive, consisting of his or her *pro rata* share of the unclaimed settlement funds, assuming total unclaimed funds after the initial distribution exceeds $10,000). *Id.*; ECF 26-1, Exhibit A, ¶ 83.

On January 16, 2019, Rust mailed the Notices to 316 Class Members, and emailed Notices to 314 Class Members. Terp Decl. ¶8. The Notice packages consisted of Notice, and a Consent to Join Form for members of the FLSA Collective. Terp Decl., Exhibits A & B. The Notice informed each recipient of the work-week total, and whether or not he/she signed a severance agreement, based upon Defendant's employment records, that had been used to calculate the recipient's minimum settlement payment amount. *Id*. The Notices advised Class Members of the steps to take if they believed that their work-week total was inaccurate. *Id.*

Of the Notices to the Class Members' most recent known addresses based upon Defendant's records (after running the addresses through the U.S. Postal Service Change of Address system), seven were initially returned as undeliverable to Rust. Terp Decl. ¶9. Of these, the Claims Administrator was able to locate addresses and re-mail Notices to

four individuals. *Id.* Of the three Class Members who could not be located by the Claims Administrator, one eventually opted into the settlement, leaving just two Class Members who the Claims Administrator could not reach. *Id.*; *see supra* fn. 1.

The Claims Administrator set up a toll-free number that Class Members could contact with any questions. Terp Decl., Exhibits A & B. To date, the Claims Administrator reports that it has handled about 87 incoming calls. Terp Decl. ¶14. On March 1, 2019, approximately half way through the notice period, the Claims Administrator sent a reminder postcard, which included non-retaliation language, to each Class Member who had not yet opted into the Settlement. Terp Decl. ¶10.

Although the Amended Settlement Agreement did not call for it, Plaintiffs' counsel obtained from Defendant the contact information for all members of the FLSA Collective who were also former employees. Terp Decl. ¶11. Plaintiffs' Counsel made several rounds of calls to each of these individuals to ensure that they had received and not inadvertently ignored the Notice package. *Id.* In sum, the undersigned worked diligently with Rust to ensure Class Members knew of the settlement.

## 2. The Reaction of the Class Members Demonstrates Overwhelming Support for the Settlement.

Approximately 80% of the Advocates covered by the deal have chosen to accept it, none have objected, and only two of 145 California Class Members affirmatively opted out. Terp Decl. ¶¶12, 13. Of the 171 members of the FLSA Collective, to date, 101 (or 59%) affirmatively opted into the case by the time of this Motion's filing. This number may rise by the time Rust provides its supplemental declaration.

This is a strong rate of affirmative participation, given what this Court has said in the past about the barriers to opting-into a case brought under the FLSA. *See Rutti v. Lojack Corp.*, 2012 WL 3151077, at ** 5-6 (C.D. Cal. July 31, 2012) (approving $900,000+ fee award in case with 7.6% (22 out of 289) opt-in rate in FLSA case, discussing "the myriad reasons employees have not to opt-in to FLSA collective actions,"

---

including *inter alia* inertia, uninformed class members, fear or retaliation, and holding "that a low [FLSA opt-in] participation rate is [not] any reflection on Counsel's competence or success and, as such, should not affect the amount of fees due Counsel.").

## IV.  THE COURT SHOULD GRANT FINAL APPROVAL.

### A.  Class Certification Is Appropriate.

The Court thoroughly reviewed class certification criteria under Fed.R.Civ.P. 23 and granted preliminary approval of the class settlement after doing so. ECF 33, pp. 2-5. In particular, the Court found – and should continue to find - under Rule 23(a): 1) the Class is numerous – which remains true, with over 250 participating in the settlement; 2) commonality, based upon common questions concerning whether the administrative exemption under state or federal law applies to Defendant's classification of Advocates, and Defendant's willfulness in making that decision; 3) typicality, since, among other things, "both Plaintiffs and the putative class and collective members have suffered from the same allegedly wrongful conduct by [Defendant] because Plaintiffs were subjected to each of the employment practices alleged in the Complaint" (ECF 33, p. 4); and 4) adequacy, in that "Plaintiffs and their counsel appear to be qualified and competent." (*Id.*).

Likewise, there is no reason to revisit the Court's decisions, granting preliminary approval, under Rule 23(b)(3), finding predominance and superiority. As the Court noted, "Class certification is usually appropriate where "liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." (ECF 33, p. 5). It remains the case that "the alleged claims stem from [Defendant's] consistent employment practices that were uniformly applied to each of [Defendant's] Client Advocates, Senior Client Advocates, Operations Consultants, Senior Operations Consultants, and/or other job titles performing the same or similar customer complaint processing duties in [the company's] Regulatory Complaints and Social Media Servicing Group." *Id.* As the Court found, "During the applicable class periods, all of the

---

putative class and collective members were subject to the same policies. Accordingly, the predominance requirement is met." *Id.*

As to superiority, as the Court found, *inter alia,* "the large number of putative class and collective members and the commonality of the issues presented render the class action procedure a superior method to address the putative class members' claims." *Id.*

Accordingly, and based on the showing made in both the motion for preliminary approval and the current motion for final approval of the Settlement Agreement, and as discussed more fully in this Court's order granting preliminary approval of the Settlement Agreement, the Court should find that Plaintiffs have met their burden in establishing the prerequisites for class certification. *See, e.g., Dorsette v. TA Operating LLC*, 2010 WL 11583002, at *3 (C.D. Cal. July 26, 2010) (Anderson, J.).

## B.    Final Approval Is Warranted for a Fair, Adequate, and Reasonable Settlement Like this One.

Federal law strongly favors and encourages settlements, especially of class actions. *See Franklin v. Kaypro Corp.*, 844 F.2d 1222, 1229 (9th Cir. 1989) ("[I]t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits.") (citations omitted). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not a product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

To approve a proposed settlement of a class action under Federal Rule 23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual

component parts, that must be examined for overall fairness." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Although Rule 23 provides no precise formula for making this determination, the Ninth Circuit has identified several factors to be considered: (1) the strength of the case; (2) the size of the claims and amount offered to settle them; (3) the risk, expense, complexity and likely duration of further litigation; (4) the stage of the proceedings, *i.e.*, whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; and (6) the reaction of the class to the proposed settlement. *See id.* (noting that the relative importance of each of these factors will depend on the circumstances of the case). Here, all factors favor final approval.

## C. Each Factor Weighs in Favor of Granting Final Approval.

### 1. The Settlement is an Exceptional Result in a Case where Success was Uncertain.

Plaintiffs' Counsel has analyzed and evaluated the merits of Plaintiffs' claims and Defendant's exemption defenses. *See* ECF 15, pdf pp. 13:3-14:10, 17:5-20:22. Plaintiffs contend that Defendant would be unable to meet their burden on any exemption, under either federal or California law. Plaintiffs would argue that Clients Advocates were non-exempt employees, because their job duties involved producing written responses to customer, government, or other organizational inquiries regarding various bank lines of business, according to set policies, procedures, and quality guidelines, and under supervision of managers and a quality assurance department. *See* ECF 15, pdf pp. 12:9-22, 13:30-14:7. Plaintiffs maintain that Operations Consultants should have been non-exempt, since they merely supported the Client Advocates. *See* ECF 15, pdf pp. 12:22-13:2, 13:30-14:7.

On the other hand, as summarized in the preliminary approval motion, Defendant would have argued that customer processing duties, including those related to regulatory

issues, are an exempt administrative function, related to quality control, government relations, legal and regulatory compliance, and other traditionally exempt functional areas. *See* ECF 15, pdf p. 14:3-20.

As elaborated in the initial motion approval motion, although Plaintiffs believe in their claims, significant uncertainties and risks exist. For example, there are no dispositive federal authorizes on the subject of customer service employees like the Advocates, and there is authority holding other types of customer-relations duties exempt. *See, e.g., Copas v. East Bay Mun. Util. Dist.*, 61 F. Supp. 2d 1017 (N.D. Cal. 1999) (public relations officer performing public information functions was exempt administrative employee); *Verkuilen v. MediaBank, LLC*, 646 F.3d 979, 982-983 (7th Cir. 2011) (account manager who consulted with customers was exempt); *Cash v. Cycle Craft Co. Inc.*, 508 F.3d 680 (1st Cir. 2007) (exempt customer relations manager). *See also* ECF 15, pdf pp. 17:5-18:9.

Other risks exist as to: Defendant's good-faith defense; Plaintiffs' ability to recover interest and penalties; the application of the fluctuating workweek to diminish the value of overtime damages; and, the statute of limitations running on most Advocates' FLSA claims as litigation progressed. These uncertainties make acceptance of the Amended Settlement Agreement more advantageous to the Class than continued litigation. *See, e.g.* ECF 15, pdf pp. 17:8-20:22.

Accordingly, this factor favors settlement approval.

## 2. The Amount Offered to Settle the Claims is Substantial, in Light of the Size of the Claims and the Risks of Proceeding.

As noted above the gross average recovery per Class Member approaches $8,000/person – and Class Members who worked the full Class Period in California will net over $10,000. Terp Decl. ¶¶7, 17. These amounts far exceed the outcomes in average wage/hour class settlements. *See* ECF 15, pdf p. 22:24-28 (NERA Economic Consulting study of settlements between 2007-2015 shows most cases settle for just hundreds per year per person, with few cases grossing more than $5,000/person); ECF 15-1, ¶ 9; *id.*,

Exhibit B (study).

For those participating Class Members who do not exclude themselves from the class, if any fails to cash a check for 90 days, Rust will effect a *pro rata* second distribution to those class members who negotiate their checks, unless the unclaimed funds are $10,000 or less. ECF 26-1, Exhibit A, ¶¶ 63, 83. Thus, the settlement distribution provides additional possible remuneration to participating class members.

Plaintiffs' Counsel believe the recovery of $1,950,000 for the participating Class Members is ample, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes . . . [given that] the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . ." *Officers for Justice*, 688 F.2d at 624 (citations omitted).

The Court need not compare the Settlement to an estimated full-relief, best-day outcome in the case if it were fully litigated. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965-966 (9th Cir. 2009). However, Plaintiffs' Counsel have estimated that relief for the Advocates (based upon reasonable assumptions and omitting speculative penalties (*see Rodriguez* at 955 (9th Cir. 2009) (omitting full penalties from damages estimate)) would be approximately $5.1 million, such that the Settlement represents 38% of full relief. *See* ECF 15, pdf pp. 30:16-31:5; ECF 15-1, ¶ 10. The settlement is not judged against this speculative measure of what might have been achieved. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). The Settlement provides for substantial payment to the Class now, rather than a hoped-for payment far down the road. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds).

As highlighted in the initial preliminary approval motion, continued litigation was likely to decimate the FLSA Collective whose class period ended on December 31, 2015. If the case had not settled, nearly all FLSA collective members who had not opted-into

the case before 2019 would have had no workweeks within the statute of limitations,[3] absent a ruling granting equitable tolling. (ECF 15, pdf pp. 14:15-22, 20:11-22)

This settlement compares favorably to others approved in the Central District, *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067 (C.D. Cal. Jan. 7, 2010) (Philips, J.) (approving $3.625 million settlement ($2.617 million net) for 313 FLSA class members and 174 California class members in a wage and hour class action alleging misclassification – yielding $5,374/per person on average – where reclassification had occurred notwithstanding the case). Comparable wage and hour class action settlements approved by this and other federal courts in the Ninth Circuit have provided far less relief to the Class. *See, e.g.*, *Mojica v. Compass Group*, 13-cv-1754 (C.D. Cal., Mar. 14, 2019) (Fisher, J.) (preliminary approval order submitted as **Exhibit D** to the Terp Decl.) (granting preliminary approval to $5 million settlement for 22,000 food service employees with net settlement fund of $3,175,834, and only 25% guaranteed pay-out to claimants, with $144.36 payments to each wage/hour class action member if all participate); *O'Sullivan v. AMN Servs., Inc.*, 12-cv-2125 (N.D. Cal. Feb. 7, 2014) (final approval order submitted as **Exhibit E** to the Terp Decl.) (final approval granted to settlement for $3 million for a class of 11,685 people (average of $478 per person), though total exposure was $108 million, before penalties and interest); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (Carter, J.) (finding that settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness,'" where settlement provided approximately $2,500/person for 974 class members, before fees, costs and enhancements were subtracted).

The Notices of settlement provided information regarding the nature of the claims, the minimum amount each Class Member could expect to receive, and the manner in

---

[3] In April 2018, the Parties agreed to a period of tolling. ECF 15-1, brief p. 2:16-24; ECF 26-1, Exhibit A, ¶ 29.

which the settlement payments would be calculated. *See* Terp Decl. A & B. The Notices thus provided Class Members with accurate information on the value of the allocations potentially available to them.

Because the settlement is non-reversionary, Defendant will recover none of the settlement amount paid here. *See Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007) (disapproving reversion); *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (noting that reversion of class members' recovery to the defendant is one indication of collusion in the settlement process).

Considering the immediate value of settlement and the enthusiastic Class Member response, the Settlement is well within the range of reasonableness.

**3. Further Litigation Would be Risky, Expensive, Complex, and Time-Consuming.**

As discussed in the initial preliminary approval motion, the settlement avoids a delay of years for trial and the appeal that would likely follow if Plaintiffs prevailed at trial. (ECF 15, pdf pp. 20:22-21:8, 30:10-15). Among other factors to consider: there is a lack of direct legal authority concerning positions like the Advocates' (ECF 15, pdf pp. 17:5-18:9); misclassification cases always present a risk of decertification or loss on the merits after extensive litigation (*see, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009), and *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009)); and some class members signed severance agreements that Defendant may have sought to enforce (*see* ECF 15-1, ¶ 8). Plaintiffs' Counsel believe that the benefit of the instant Settlement outweighs these risks and delays.

**4. The Stage of the Proceedings Favors this Settlement.**

The stage of proceedings and discovery also favors approval of the Settlement. This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney*, 151 F.3d at 1239. Here, in addition to Plaintiff Counsel's independent investigations (ECF 15-1, ¶ 8), the Parties exchanged in

extensive informal discovery (ECF 15-1, ¶ 6). Perhaps most importantly, Plaintiffs discovery revealed that almost all of the Advocates were already re-classified to non-exempt status by Defendant. (ECF 15-1, ¶ 8). Thus, an early settlement providing substantial relief for Advocates was justified by the limited damages window, which was diminishing daily for FLSA claims. As such, the litigation had reached a stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). The stage of proceedings favors approval of the Settlement.

### 5. The Able Class Representation and Class Counsel's support for the Deal Support Settlement Approval.

The Class Members have been represented by attorneys who are experienced in the areas of law at issue here. *See* Aug. 2018, Schwartz Decl. ¶¶ 19, 20. Class Counsel have significant experience in both the substance of wage and hour claims and the procedures for class and collective actions. *Id.* Class Counsel recommend approval of the Amended Settlement Agreement as it achieves an exceptional result for Class Members under the circumstances. Aug. 2018, Schwartz Decl. ¶ 7. Plaintiffs' Counsel respectfully submit that their support should be accorded significant consideration. *See Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (Baird, J.) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citations omitted).

The Class Representatives, Mr. Duque and Mr. Thibodeau, also ably represented the Class. As discussed in the initial preliminary approval motion, and as discussed regarding enhancements, *infra*, these individuals: were engaged in the litigation, investigations, and informal discovery; reviewed the pleadings, the settlement, and other documentation; provided declarations in support of preliminary approval; and, have persevered in the litigation, despite the fear of retaliation within the banking industry.

### 6. The Positive Reaction of the Class to the Proposed Settlement Strongly Favors Settlement Approval.

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a factor of significance. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy" (internal quotation marks and citation omitted)); *Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059-60 (D.S.D. 2000) (approving the relevant settlement in large part because only 3% of the apparent class had objected to the settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (approving the settlement and holding that the fact that none of the class members had objected and a small percentage opted out of the settlement was "entitled to nearly dispositive weight").

To date, no California Class Member has objected to the settlement, just two California Class Members have opted out of the settlement, and no Class Member has withdrawn his or her consent form. Terp Decl. ¶¶12, 13. With nearly 80% of the Class Members participating in the settlement, this factor strongly favors settlement approval.

**D.     Representative and Opt-In Plaintiffs' Modest Enhancements Are Appropriate.**

**1.     Class Representatives' Enhancements**

Named Plaintiffs are eligible to receive reasonable incentive payments." *Staton*, 327 F.3d at 977; *Dorsette*, 2010 WL 11583002, at *8. At final approval, the Court evaluates enhancement payments individually, to determine their propriety. *Id.* To evaluate proposed incentive awards, the Court can consider numerous factors, including,

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the

class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The Amended Settlement Agreement provides, and this Motion requests, that Class Representatives Duque and Thibodeau receive a service award of $5,000 each for their roles as class representatives, a presumptively reasonable amount. ECF 26-1, Exhibit A, ¶ 56; *see Simon v. Toshiba Am.*, 2010 WL 1757956, at *5 (N.D. Cal. April 30, 2010) ("incentive payments of $5,000 are presumptively reasonable."). Courts routinely approve $5,000 incentive payments. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive awards of $5,000 each to the two class representatives of 5,400 potential class members in a settlement of $ 1.725 million); *Dorsette*, 2010 WL 11583002, at *8. In *Dorsette*, this Court awarded a $5,000 incentive award to plaintiff, where the total settlement fund was worth $900,000, the average class member was expected to recover $208, and the $5,000 was equal to 0.55% of the whole. *Id.,* 2010 WL 11583002, at *8.[4]

As noted above, since the average amount recovered by each class member will be nearly $8,000 gross (approximately $5,600 net)*,* the $5,000 service awards sought are not disproportional.  Terp Decl. ¶27. Based on a $1,950,000 Gross Settlement Fund, Class Representatives' requested awards are each worth 0.26% of total recovery. *Id*. This

_____

[4] *See also, e.g., Staton*, 327 F.3d 977 (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each named plaintiff); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D. Cal. 2015) (awarding named plaintiff in wage and hour class action $10,000 as a service award, and an additional $5,000 award solely for the general release that the named plaintiff executed as part of the settlement agreement); *Van Vranken,* 901 F. Supp. at 299 (awarding $50,000 to a lead plaintiff).

compares favorably with other settlements where $5,000 awards were approved, like *Dorsette*.

Further, several factors in the incentive payment analysis articulated in *Van Vranken* support the service payments to the Class Representatives here. First, Plaintiffs Duque and Thibodeau experienced reputational risk and harms as a result of bringing this case, by placing themselves into the public spotlight and feeling like they are losing a source of job references and future employment opportunities based on participation in this lawsuit. ECF 15-3, Declaration of Daniel Thibodeau ("Thibodeau Decl."), ¶ 25; ECF 15-2, Declaration of Luis Duque ("Duque Decl.") ¶ 26; *see also Rutti*, 2012 WL 3151077, at *5 (citing research, noting the "strong disincentives for employees to participate in a class action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA"); *Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (justifying service awards based on plaintiffs' "willingness to serve as representatives despite the potential stigma that might attach to them in the banking industry from taking on those roles").

Second, Class Representatives Thibodeau and Duque spent significant time on this case, including working with Class Counsel by reviewing the complaints, reaching out to putative Class members, providing investigatory leads for counsel to pursue, preparing to produce document and interrogatory responses with the assistance of counsel, reviewing pleadings and agreements, consulting extensively with Plaintiffs' counsel about the case, both before and after filing the cases, providing key information that counsel used in preparing for mediation, reviewing and providing feedback on the terms of the proposed settlement agreement, staying up-to-date on developments in the case, and providing declarations used to support settlement approval. Aug. 2018 Schwartz Decl. ¶ 14; Thibodeau Decl. ¶ 26; Duque Decl. ¶ 27. Further, Class Representative Thibodeau took a day off of work and drove to/from Los Angles to attend the successful full-day mediation. Aug. 2018 Schwartz Decl. ¶ 14; Thibodeau Decl. ¶ 26.

Without the Class Representatives stepping forward to assert their claims publicly, far fewer Advocates would now recover for their missed overtime and related compensation. Others declined to serve as class representatives for fear of retaliation, public notoriety, unwillingness to commit the time, and/or for other personal circumstances. Aug. 2018 Schwartz Decl. ¶ 15.

Third, the personal benefit that the Class Representatives would receive if they received the same settlement payment as other Class Members would not come close to compensating them for the foregoing personal costs they have paid in order to benefit the Class. Had the Class Representatives proceeded individually, rather than sacrificing for the Class, they might have recovered more than their recovery here.

Finally, the Class Representatives are executing a much broader waiver of claims than other Class Members, warranting additional compensation. ECF 26-1, Ex. A ¶¶ 87-88; *see Dent v. ITC Serv. Grp., Inc.*, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding service payment in part because wage-hour plaintiff signed a general release). Unlike the other Class Members, Class Representatives have agreed to release all claims against Defendant, even beyond those claims released in this action. *See Dorsette*, 2010 WL 11583002, at *8 (acknowledging the value of a global release).

## 2.    Opt-In Plaintiffs' and Declarants' Enhancements

Class Counsel seeks an enhancement payment of $2,500 each for opt-in Plaintiffs Gamble, Fuentes, and Abad. Terp Decl. ¶28. Opt-in Plaintiffs Gamble, Fuentes, and Abad were important to the successful outcome of this case. *See Satchell v. Federal Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) (preliminarily approving awards of up $5,000 each to 18 class members who signed declarations and were deposed. *Cf. Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving $1,000 to each class member deponent).

The requested $2,500 is less than 0.13% of the $1,950,000 Gross Settlement Amount, and less than one third of counsel's conservative, average gross settlement

estimate for all class members. Terp Decl. ¶28. This is small compensation for these individuals' "immeasurable" contributions to the case. *Wineland*, 267 F.R.D. at 677-78.

All three opt-in Plaintiffs consulted with undersigned counsel, and were willing to provide valuable evidence in this case. Aug. 2018 Schwartz Decl. ¶ 16. As the first three opt-ins, opt-in Plaintiffs preserved their FLSA claims by stopping the ticking statute of limitations in *Duque I*, 18-cv-00016-PA-MRW (Dkt. Nos, 6, 14, 27) making their FLSA claims more valuable than other Class Members', warranting additional compensation.

Opt-in Plaintiff Gamble contributed to challenging Defendant's misclassification, by agreeing to serve as a named plaintiff. April 2019 Declaration of Sharon Gamble ("Apr. 2019, Gamble Decl."), ¶¶ 3 - 5. For various reasons, she ultimately withdrew as a plaintiff, and opted into the instant case. *Id.* ¶ 3; Aug. 2018 Schwartz Decl. ¶ 3. Opt-in Plaintiff Gamble also independently reached out to Class Members to encourage them to opt-into the case – though some of those individuals chose not to do so at that time, articulating to her that they feared retaliation. Apr. 2019 Gamble Decl. ¶ 6. In all, Opt-in Plaintiff Gamble estimates that she spent 40 hours speaking to Class Members, consulting extensively with Plaintiffs' Counsel regarding the pleadings, providing Plaintiffs' Counsel with documents, and keeping up-to-date on the case. *Id.* at ¶ 7. Ms. Gamble provided a declaration, which provided facts about her job duties, which Plaintiffs' Counsel used in support of preliminary approval. ECF 15-4, January 2018, Declaration of Sharon Gamble ("Jan. 2018 Gamble Decl.").

Opt-in Plaintiff Fuentes joined the case early, when others who will also receive the benefits of the settlement had not done so. April 2019 Declaration of Felipe Fuentes ("Apr. 2019 Fuentes Decl."), ¶¶ 6, 7. He spent significant time consulting with Plaintiffs' Counsel, providing documents to Plaintiffs' Counsel, and keeping updated on the case. Apr. 2019 Fuentes Decl. ¶ 7. He also provided a declaration, which Plaintiffs' Counsel used to support their preliminary approval briefing. *Id.*, ECF 15-5, January 2018 Declaration of Felipe Fuentes ("Jan. 2018 Fuentes Decl."), ¶ 6.

Opt-in Plaintiff Abad contributed to the case in unique ways: she provided valuable information about the Operations Consultant position. Aug. 2018 Schwartz Decl., ¶ 14. She was the first person to opt-into this case in that position, and the first to opt in from outside of California (*Duque I*, 18-cv-00016-PA-MRW (Dkt. No. 27)).

For these reasons, awarding $5,000 each to Class Representatives Duque and Thibodeau, and $2,500 each to opt-in Plaintiffs Gamble, Fuentes, and Abad, is reasonable for service awards in a case of this nature, that viably promotes the public policy interest in encouraging those with wage-and-hour claims to assert them despite fears, personal burdens, and  time associated with doing so. Aug. 2018 Schwartz Decl. ¶ 17.

## E. The Requested *Cy Pres* Beneficiary Is Appropriate.

Under *Dennis v. Kellogg Co.*, the Ninth Circuit requires "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." 697 F.3d 858, 865 (9th Cir. 2013) (internal quotations omitted). The Amended Settlement Agreement designates Legal Aid at Work (www.legalaidatwork.org) as the *cy pres* recipient. ECF 26-1, Exhibit A, ¶ 63. This is a workers' rights suit seeking overtime wages in California, among other claims, and Legal Aid at Work is the leading provider of direct legal services in employment law for low-wage workers in California. Legal Aid at Work supports workers' rights clinics addressing wage issues in Orange County, among other areas of the state. *See* https://legalaidatwork.org/clinics-and-helplines/ (last viewed Apr. 15, 2019). There is a strong nexus, and the Court should approve this *cy pres* recipient. *Id.*; Aug. 18 Schwartz Decl., ¶ 23.

## V.    CONCLUSION

For the foregoing reasons, Class Representatives Duque and Thibodeau respectfully request that this Court grant final approval of the class settlement reached in this matter; award requested service payments; approve attorneys fees' fees and costs awards (for reasons described in a separate fee/cost motion), and enter the proposed order

1    and judgment accordingly.

2                                              **BRYAN SCHWARTZ LAW**

3          Date: April 15, 2019              By: /s/ *Rachel M. Terp*

4                                              Bryan J. Schwartz
                                               Rachel M. Terp
5                                              *Attorneys for Plaintiffs and Proposed*
                                               *FLSA Collective and California Class*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28